[No. A119738. First Dist., Div. Three. Mar. 19, 2009.]

MARGARET HILDEBRANDT et al., Plaintiffs and Appellants, v.
ST. HELENA UNIFIED SCHOOL DISTRICT, Defendant and Respondent.

### COUNSEL

Beeson, Tayer & Bodine, David N. Weintraub and Sara Sandford-Smith for Plaintiffs and Appellants.

Miller Brown & Dannis and Lawrence M. Schoenke for Defendant and Respondent.

Lozano Smith, Namita S. Brown, Sarah Levitan Kaatz and Dulcinea A. Grantham for California School Boards Association-Education Legal Alliance as Amicus Curiae on behalf of Defendant and Respondent.

## OPINION

**POLLAK, Acting P. J.**—When a school district lays off certificated employees because of a reduction of services, pursuant to Education Code[1] section 44955, are part-time employees with greater seniority entitled to "bump" a full-time employee with lesser seniority? We agree with the trial court that they are not and, therefore, shall affirm its judgment denying the writ of mandate sought by part-time certificated employees who were released while the school district retained a similarly credentialed full-time employee with lesser seniority.

### Background

Following the termination of a memorandum of understanding under which the St. Helena Unified School District (the district) had provided special education services to three other school districts, the district initiated layoff proceedings under section 44955 to reduce or discontinue five full-time certificated positions, including one full-time equivalent (FTE) school psychologist position. At the time, the district employed appellant Margaret Hildebrandt in a .8 FTE position as a certificated school psychologist and appellant Susan Wood-DeGuilio in a similar .2 FTE position. Both appellants had seniority dates that preceded the seniority date of Ramah Commanday, who was employed by the district as a full-time certificated school psychologist. Although timely termination notices were given to all three employees, the district subsequently rescinded the notice to Commanday. Following an evidentiary hearing, an administrative law judge found that it was necessary to eliminate one FTE psychologist position and rejected appellants' contention that because of their greater seniority the district was required to retain them in preference to Commanday. According to the administrative law judge, "District does not allow a part-time employee to bump a full-time employee. It also believes that a full-time psychologist is what is needed for program continuity. [¶] . . . [¶] . . . Wood-DeGuilio and Hildebrandt are entitled to the same part-time positions they would have held had no reduction in service occurred. The part-time positions which they are entitled to retain by virtue of seniority and qualifications have been discontinued. Wood-DeGuilio and Hildebrandt do not have the right to force District to divide a full-time position to accommodate their desire for part-time employment. Therefore, District may lay off both Wood-DeGuilio and Hildebrandt."

The district's governing board adopted the proposed decision of the administrative law judge, and the superior court subsequently denied a petition for a writ of mandamus seeking to set aside that decision. Appellants have timely appealed from that denial.

---

[1] All statutory references are to the Education Code.

## Discussion

The issue presented by this appeal is essentially a question of law, as to which this court must exercise its independent judgment. (*Pacific Gas & Electric Co. v. Department of Water Resources* (2003) 112 Cal.App.4th 477, 491 [5 Cal.Rptr.3d 283].) Insofar as the decision turns on questions of fact, the findings of the trial court, which adopted those of the administrative law judge, must be upheld if supported by substantial evidence. (*Ibid.*; *Neumarkel v. Allard* (1985) 163 Cal.App.3d 457, 460 [209 Cal.Rptr. 616].)

Section 44955, subdivision (b) provides in relevant part that when the governing board of a school district deems it necessary for specified reasons[2] to decrease the number of permanent employees in the district, "the governing board may terminate the services of not more than a corresponding percentage of the certificated employees of the district, permanent as well as probationary, at the close of the school year. Except as otherwise provided by statute, the services of no permanent employee may be terminated under the provisions of this section while any probationary employee, or any other employee with less seniority, is retained to render a service which said permanent employee is certificated and competent to render." Subdivision (c) provides further that "[t]he governing board shall make assignments and reassignments in such a manner that employees shall be retained to render any service which their seniority and qualifications entitle them to render."[3]

■ Reading the statutory language literally, there is considerable force to appellants' position. Though part time, both appellants are permanent employees certificated to render the services of a school psychologist that Commanday performs. Although the district argues that they are not "competent" to render those services because they are only part-time employees and not entitled to a full-time position,[4] that is not how competence is normally understood for purposes of the Education Code. (See, e.g., *Forker v. Board of*

---

[2] These reasons include that "a particular kind of service is to be reduced or discontinued not later than the beginning of the following school year" (§ 44955, subd. (b)), the district's reason in this case.

[3] Subdivision (d) of section 44955 authorizes a district to deviate from the order of seniority (referred to as "skipping") if it demonstrates a specific need for a certificated employee with special training and experience which others with more seniority do not possess, or for purposes of maintaining compliance with constitutional requirements "related to equal protection of the laws." The district does not seek to justify the retention of Commanday by either exception in subdivision (d).

[4] The district asserts, "The term 'competency' is not used by the district in this case to impugn or suggest that either appellant has performed poorly in the past or [is] mentally or physically incompetent to perform the job of a full or part-time school psychologist. The legal use of the term 'competent' here refers to the fact that the employee is simply not entitled or 'qualified' to displace another employee who is the only employee in the District who had ever obtained permanence in the District's retained service of 'full-time school psychologist.' "

*Trustees* (1984) 160 Cal.App.3d 13, 19 [206 Cal.Rptr. 303] ["the term 'competent' as used in section 44956 relates to specific skills or qualifications required of the applicant"]; *Duax v. Kern Community College Dist.* (1987) 196 Cal.App.3d 555, 565 [241 Cal.Rptr. 860].) And, as stated in *Krausen v. Solano County Junior College Dist.* (1974) 42 Cal.App.3d 394, 402 [116 Cal.Rptr. 833], and repeated in numerous subsequent decisions, the language of the statute "is not ambiguous. It contains a mandatory directive to the board to determine whether any employee whose employment is to be terminated for a reduction in attendance or for a reduction in a particular type of service possessed the seniority and qualifications which would entitle him to be assigned to another position. It seems clear that the provision in question does confer seniority rights and bumping privileges upon probationary, as well as permanent, employees. The provision has been interpreted to mean 'that when a [particular] service is eliminated [or reduced] the holder of the position is not necessarily terminated, but is entitled to another assignment to which his seniority and qualifications entitle him.' " (E.g., *Campbell Elementary Teachers Assn., Inc. v. Abbott* (1978) 76 Cal.App.3d 796, 813 [143 Cal.Rptr. 281].)

In rejecting appellants' contention, both the administrative law judge and the superior court relied primarily on two decisions rendered under section 44956, which confers on permanent employees terminated under section 44955 a preferred right to reappointment if the discontinued service is reestablished within 39 months of the employee's termination. Like section 44955, this section provides "that no probationary or other employee with less seniority shall be employed to render a service which said employee is certificated and competent to render." (§ 44956, subd. (a)(1).)

In *King v. Berkeley Unified School Dist.* (1979) 89 Cal.App.3d 1016 [152 Cal.Rptr. 782], a certificated school counselor who had previously been terminated because of a reduction in services sought to enforce her right to preferential employment under what is now section 44956.[5] The school district hired a new employee to fill a new position that involved 50 percent counseling duties, and 50 percent teaching duties for which the former employee was not certificated. In rejecting her petition for a writ of mandate, the court observed that the former employee was not qualified for the teaching half of the new position and that "[n]o cited authority compels [the school district] to offer two separate half-time positions in order to accommodate those previously laid off." (89 Cal.App.3d at p. 1021.)

---

[5] That case and many of the cases cited in this opinion addressed the Education Code prior to the reorganization that became effective in 1977. The provisions of former section 13448 are now found both in section 44956, applicable to elementary and secondary schools, and in section 87744, applicable to community colleges. The provisions of former section 13447 are now found both in sections 44955 and 87743.

In *Murray v. Sonoma County Office of Education* (1989) 208 Cal.App.3d 456 [256 Cal.Rptr. 353] (*Murray*), a school nurse was employed by the Sonoma County Office of Education in a permanent .16 FTE position that was discontinued for budgetary reasons. She sought a writ of mandate when the Office of Education created a full-time nursing position the following year but employed another person with less seniority to fill the position and refused to reinstate her to a .16 FTE position. The nurse contended "that under section 44956 she is entitled to be rehired as a part-time school nurse before an employee with less seniority may be hired to fill a full-time school nurse position." (*Id.* at p. 460.) In rejecting this contention, the court stated, "First, the purpose of section 44956 is 'to give a permanent [employee] . . . the same employment rights that she would have had if no layoff had intervened, *but to no greater rights.*' (*Waldron* v. *Sulphur Springs Union School Dist.* (1979) 96 Cal.App.3d 503, 505 [158 Cal.Rptr. 132], italics added.) Thus, when a part-time employee is laid off he or she is not entitled to a *full-time* position which subsequently opens up. Section 44956 only requires that the employee be returned to his or her 'prelayoff' status. (*Id.* at pp. 505–506.) Moreover, in our view [the nurse] did not have the right to force the Office of Education to divide the full-time position to accommodate her desire for a part-time position." (*Ibid.*)

The court in *Murray* also rejected the nurse's claim on the additional ground that section 44956 did not apply to her situation because the .16 FTE school nurse position was not the same "service" as the full-time nursing position that became available. According to the court, "The resolution of this issue depends on how we define the 'service' which was discontinued. [The nurse] contends that the 'service' is the one day per week of nursing provided to [a particular school district]. [The Office of Education], on the other hand, suggests that the 'service' is the .16 FTE position which was discontinued but never reestablished. We believe that [the Office of Education's] interpretation of 'service' is more reasonable. [¶] . . . [The nurse's] 'service' (one day a week of nursing to be used by the Office of Education) was discontinued but has not been reestablished. Instead, a full-time nurse has been assigned to cover the [particular school district], a function formerly covered by the 'service' [the nurse] provided. [¶] . . . [¶] Since the 'discontinued service' (her .16 FTE position) has not been reestablished, we conclude that [the nurse] is not entitled to reemployment under section 44956." (*Murray, supra*, 208 Cal.App.3d at p. 461.)

Appellants in the present case dispute the applicability of *King* and *Murray* because those cases concerned the right to reinstatement under section 44956, rather than the right to retention under section 44955. Appellants assert that the inclusion in section 44955 of the additional provision not found in section 44956, that "[t]he governing board shall make assignments and reassignments in such a manner that employees shall be retained to render any service

which their seniority and qualifications entitle them to render," indicates that in a layoff situation a part-time employee with greater seniority is entitled to require the splitting of a full-time position held by an employee with less seniority, even though the former employee may not do so in a rehiring situation.

■ There is no reason to draw such an implication from the additional provision in section 44955. The provision is meaningful in that section because when layoffs are being made, employees who lose their position are entitled to displace, or "bump," employees with less seniority from their positions; hence the requirement that the school district make assignments and reassignments to respect the employees' relative seniority rights. However, ordinarily there is no bumping when a former employee is rehired under section 44956 because the rehiring occurs only when the discontinued service is reestablished or the number of employees is increased.[6] Hence, there is no reason for a similar reassignment provision in section 44956, and the inclusion of such a provision in section 44955 does not suggest any intent to require the splitting of full-time positions when layoffs occur that is not required in the case of reinstatement.

■ More telling is the similarity between the language of sections 44955 and 44956 related to the order of layoff and reemployment. As pointed out above, section 44955, subdivision (b) provides that "the services of no permanent employee may be terminated under the provisions of this section while any probationary employee, or any other employee with less seniority, is retained to render a service which said permanent employee is certificated and competent to render." Section 44956, subdivision (a)(1) provides that "no probationary or other employee with less seniority shall be employed to render a service which said employee is certificated and competent to render." "A statute should be interpreted with reference to the whole system of law of which it is a part." (*People v. Comingore* (1977) 20 Cal.3d 142, 147 [141 Cal.Rptr. 542, 570 P.2d 723]; see also, e.g., *Vasquez v. Happy Valley Union School Dist.* (2008) 159 Cal.App.4th 969, 984 [72 Cal.Rptr.3d 15].) The provisions in the two sections should be read together and applied consistently if reasonably possible to do so. (*Bettencourt v. City and County of San Francisco* (2007) 146 Cal.App.4th 1090, 1100 [53 Cal.Rptr.3d 402].) The

---

[6] A potential qualification to this statement is illustrated by the circumstances in *Poppers v. Tamalpais Union High School Dist.* (1986) 184 Cal.App.3d 399 [229 Cal.Rptr. 77]. In that case an employee with less seniority was retained upon a reduction in services to fill a position that an employee with more seniority was not qualified to perform. When that position was later discontinued and there was an opening for another assignment that both employees were qualified to fill, the employee with greater seniority was held to be entitled to reemployment in that position under section 44956 in preference to the employee with less seniority. However, even in that situation, there was not a succession of reassignments as may be necessary in the case of layoffs under section 44955 following a reduction in services.

purpose of the provision in both sections is the same: to give preference to qualified employees based upon their relative seniority. If this preference does not entitle an employee with seniority to compel a school district to split a full-time position held by an employee with less seniority in the case of a reinstatement, we see no reason why a district should be compelled to split the position in the event of a layoff.

The heart of the dispute lies within the alternative ground on which the decision in *Murray* is based. The provisions in both sections 44955 and 44956 quoted above prohibit a school district, under the circumstances to which the sections apply, from employing a person with less seniority to "render a service" that an employee with greater seniority is qualified to perform. *Murray* held that a part-time position to perform a particular assignment is not the same "service" as a full-time position to perform the same assignment. Appellants argue that *Murray* "misinterpreted the word 'service.' A teacher's 'service' has no relation to the time spent in his or her position. Instead, a teacher's 'service' is the same as a teacher's 'position,' or the subject matter or grade level at which the teacher teaches."

█ School districts have broad discretion in defining positions within the district and establishing requirements for employment. (*Martin v. Kentfield School Dist.* (1983) 35 Cal.3d 294, 299–300 [197 Cal.Rptr. 570, 673 P.2d 240]; *Duax v. Kern Community College Dist., supra,* 196 Cal.App.3d at p. 565.) This discretion encompasses determining the training and experience necessary for particular positions, so long as the district does not impose requirements for reemployment under section 44956 that are not imposed on other employees who have not been subject to layoff. (*Martin v. Kentfield School Dist., supra,* at pp. 300–301.) Similarly, school districts have the discretion to determine particular kinds of services that will be eliminated, "even though a service continues to be performed or provided in a different manner by the district." (*Campbell Elementary Teachers Assn., Inc. v. Abbott, supra,* 76 Cal.App.3d at p. 812; see also *id.* at p. 808; *Gallup v. Board of Trustees* (1996) 41 Cal.App.4th 1571, 1582–1585 [49 Cal.Rptr.2d 289].)

Within the scope of a school district's discretion, there is little reason why a district should be unable to define a position as full time if the district concludes that the assignment cannot be as well performed on a part-time basis. No less than in determining the qualifications necessary to render a person competent to perform a particular assignment, this determination falls within the "special competence" of school district officials. (*King v. Berkeley Unified School Dist., supra,* 89 Cal.App.3d at p. 1023; *Duax v. Kern Community College Dist., supra,* 196 Cal.App.3d at p. 565.) As the court held in *Murray,* a district may define a "service" in terms of the hours required to perform it, so that two part-time employees performing the same responsibilities do not necessarily perform the same "service" as one full-time employee.

A school district need not define a service in such a manner, and in many situations may well determine that an assignment can equally effectively be shared by two or more part-time employees. However, so long as the determination is reasonable and made in good faith, neither section 49455 nor any other provision of the Education Code precludes a school district from defining a position, or a "service," as full time.

This conclusion is consistent with the Legislature's finding in section 35160.1 that "school districts . . . have diverse needs unique to their individual communities and programs. . . . [I]n addressing their needs, common as well as unique, school districts . . . should have the flexibility to create their own unique solutions." (*Id.*, subd. (a).) The Legislature has stated explicitly its intention to "give school districts . . . broad authority to carry on activities and programs . . . which, in the determination of the governing board of the school district . . . are necessary or desirable in meeting their needs." (*Id.*, subd. (b).)

At the administrative hearing in this case, the assistant superintendant of the district testified that the district "considers the full-time psychologist to be programmatically what we need for the students in our district for program continuity and for . . . a variety of other reasons." This testimony was amplified by the testimony of the psychologist retained in the full-time position in question.[7] The administrative law judge accepted this testimony as did the trial court that adopted her findings. Amicus curiae the Education Legal Alliance of the California School Boards Association argues that even on the assumption (with which it disagrees) that the single full-time school psychologist position could be split into separate part-time positions without disrupting the educational program of the district, "such is not always the case. At the elementary school level, where school districts generally employ a single 1.0 FTE employee to teach a particular class, requiring a district to split a full-time teaching position into two or more part-time positions to accommodate the FTE of senior employees would be extremely difficult, if not impossible." (Fn. omitted.)

---

[7] Commanday testified that the full-time position was designed "as part of a vision for a more effective and cohesive special education program." The district, she explained, consists of four school sites, requiring students to make "major transitions" moving between several grade levels and the district considers it "essential to build a program with somebody at the IEP table who knows the child, the family and history to be present at all four sites. This position was created to bridge the gap between the four different sites and four different levels. [¶] For students at the new sites this means one familiar understanding adult in an intimidating new environment." She concluded by emphasizing that "St. Helena is unique in both its size and structure. Other districts with multiple elementary and middle school sites, large high schools, they need teams of psychologists, and in those districts maybe FTE status isn't necessarily directly related to the excellence of their programs. But in this district, it is, and I think it's central, my full-time status is central to the excellence of this program." The record contains no evidence contradicting this opinion.

Neither appellant here asserts that by virtue of her seniority she is entitled to the full-time psychologist position Commanday holds. We have no occasion to consider what the appellants' rights would have been had such a demand been made.[8] Appellants' sole contention is that Hildebrandt is entitled to bump Commanday as to a .8 FTE position, and that Wood-DeGuilio is entitled to bump Commanday as to a .2 FTE position, in effect requiring the district to split Commanday's full-time position into two part-time positions. While the fortuitous circumstance that between them the two appellants held a total of one full-time position (.8 FTE plus .2 FTE) may suggest that permitting appellants to compel the district to replace Commanday should cause no administrative problems (putting aside programmatic disadvantages), this happenstance masks the difficulties that acceptance of their contention would entail. If a part-time employee with seniority were entitled to displace a junior full-time employee as to a part-time equivalent position, the full-time employee may be unwilling to continue employment in a part-time position and the district might be unable to provide the full-time service. In the present case, for example, if Wood-DeGuilio were to withdraw her demand and Hildebrandt alone were to seek retention in her .8 FTE position, Commanday might be unwilling to continue in a .2 FTE position, and the district might be unable to fill such a position, thus being left with only a .8 FTE school

---

[8] In *Ferner v. Harris* (1975) 45 Cal.App.3d 363 [119 Cal.Rptr. 385], it was held that a terminated part-time community college teacher with tenure was entitled under the predecessor provision to sections 44956 and 87744 to preference in filling a full-time vacant position. However, in that case, the court pointed out, "[n]o other terminated tenured teacher appears to be competing for the vacancy," so that there was no need to inquire into the bumping rights of the part-time employee. (45 Cal.App.3d at pp. 368–369, fn. omitted.) In *Waldron v. Sulphur Springs Union School Dist., supra,* 96 Cal.App.3d 503, the appellate court reversed an order that a teacher whose service had been reduced under section 44955 from a .4 FTE position to a .2 FTE position and who was later reappointed to a .4 FTE position, should be employed as a full-time teacher to the next vacancy pursuant to section 44956. "To hold otherwise," the court held, "would give to a teacher who was laid off a priority that she would not have had if there had been no layoff. We cannot read the statute as conferring that bonus." (96 Cal.App.3d at p. 505.) The *Waldron* court distinguished *Ferner v. Harris* on the ground that the part-time teacher in that case had previously held a full-time position, so that "after the layoff need had expired, [the teacher] was returned to his prelayoff status" (*id.* at p. 506), as was the teacher in *Waldron.* (See also *Murray, supra,* 208 Cal.App.3d at p. 460.)

In *Vassallo v. Lowrey* (1986) 178 Cal.App.3d 1210 [224 Cal.Rptr. 357], a Dr. Bette Nybakken originally held a .6 FTE position as a community college biology instructor and years later became a full-time instructor. Marilyn Vassallo became a full-time instructor after Nybakken was initially hired but before she acquired the additional .4 FTE position. When Vassallo's full-time position was eliminated because of a decline in enrollment, she claimed that Nybakken had seniority only with respect to a .6 FTE position, and that the community college district was required to reduce Nybakken's job by .4 FTE and give that .4 FTE position, as to which she had seniority, to her. While considering Vassallo's "proposed theory of 'split seniority [to have] equitable appeal,'" the court held that the statute "clearly establishes a single date for purposes of seniority." (*Id.* at p. 1215.) The court considered *Ferner v. Harris* to be inapposite because "no seniority issue or comparison of employees was involved." (*Id.* at p. 1214.)

psychologist when it wished to have a psychologist available on a full-time basis. Other potentially problematic scenarios can easily be imagined.

■ We thus agree with the court in *Murray* that appellants do "not have the right to force the [district] to divide the full-time position to accommodate [their] desire for a part-time position" (*Murray, supra,* 208 Cal.App.3d at p. 460), and we conclude that this is true with respect to the application of section 44955 as well as section 44956.

The cases on which appellants rely do not support a contrary conclusion. In pointing out "the distinction between the discontinuance of a particular kind of *service* and the termination of an employee's *services*," *Lacy v. Richmond Unified Sch. Dist.* (1975) 13 Cal.3d 469, 474 [119 Cal.Rptr. 1, 530 P.2d 1377], held only that the right to preferential reinstatement conferred by what is now section 44956 applies to employees who have been terminated and not to those who merely have been reassigned. In *Daniels v. Shasta-Tehama-Trinity J. Community College Dist.* (1989) 212 Cal.App.3d 909 [260 Cal.Rptr. 867], full-time community college teachers who had been laid off in a reduction in services were entitled to preferential reinstatement to positions teaching evening classes over temporary part-time teachers who had been hired to teach those classes. The court rejected the college district's contention that "the day school and evening school are separate entities with separate seniority lists" (*id.* at p. 922), so that day classes taught by tenured and probationary employees and night classes taught by temporary employees were two distinct types of services. The court did so because "there is nothing in the record in this case to support a claim of two separate schools; in fact, all the evidence points to the contrary. The schedule of classes included in the record mentions nothing of a separate evening college." (*Id.* at pp. 922–923.) Neither of these cases, nor any other that has been cited to us[9] or located by our own research, contains any indication that a school district may not reasonably define a particular service as a full-time position.

---

[9] This includes *Krausen v. Solano County Junior College Dist., supra,* 42 Cal.App.3d 394, and *Chambers v. Board of Trustees* (1940) 38 Cal.App.2d 561 [101 P.2d 727], both cited by appellants. In *Krausen,* a full-time probationary instructor with the least seniority in an apprentice training program who was terminated when enrollment in the program was reduced was held to be entitled under what is now section 44955 to a hearing to determine whether he was qualified to render any other services being performed by probationary teachers with less seniority. In *Chambers,* a school nurse was held to have been terminated in violation of a predecessor of section 44955 when her school district purported to make a reduction in services but in fact continued the services she had performed as a school health inspector. In neither case did the court consider whether a "service" could be defined as necessarily a full-time position.